IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIA XUE VANG,

       Plaintiff,               No. 2:10-cv-02861 KJN

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.        <u>ORDER</u>

_____/

       Plaintiff, who is represented by counsel, seeks judicial review of a final decision

of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for

Disability Insurance Benefits under Title II of the Social Security Act ("Act") and Supplemental

Security Income benefits under Title XVI of the Act.[1]  In his motion for summary judgment,

plaintiff contends that the administrative law judge ("ALJ") in this case erred by: (1) finding that

plaintiff's medically determinable impairment of post traumatic stress disorder ("PTSD") was not

a "severe" mental impairment within the meaning of the Act; (2) rejecting the uncontradicted

medical opinion of examining psychiatrist Les Kalman, M.D., Psy. D. ("Dr. Kalman") regarding

---

[1]  This case was referred to the undersigned pursuant to Eastern District of California Local
Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before
a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local Rule 301.
(Dkt. Nos. 6, 10.)

1   the functional limitations that arose from plaintiff's mental impairments, including PTSD and

2   depression, without providing clear and convincing reasons for doing so; (3) formulating a

3   residual functional capacity for plaintiff that did not account for plaintiff's mental functional

4   limitations, an argument contingent on the success of the first two arguments; (4) not applying

5   Rule 202.02 of the Medical-Vocational Guideline, see 20 C.F.R. Part 404, Subpart P,

6   Appendix 2, to find plaintiff disabled; (5) discounting plaintiff's credibility without providing

7   clear and convincing reasons for doing so; and (6) failing to provide sufficient reasons for

8   rejecting third-party lay witness statements about plaintiff's limitations provided by plaintiff's

9   family members.  (See generally Pl.'s Memo. of P. & A. In Supp. of Mot. for Summ. J. at 1, Dkt.

10  No. 13.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for

11  summary judgment (Dkt. No. 14.)

12          For the reasons stated below, the court grants plaintiff's motion for summary

13  judgment in part, denies the Commissioner's cross-motion for summary judgment, and remands

14  this matter for further proceedings.  Specifically, the court concludes that the ALJ's finding at

15  step two of the five-step sequential analysis that plaintiff's PTSD was not a "severe" impairment

16  is not supported by substantial evidence.  Relatedly, the ALJ did not provide clear and

17  convincing reasons for rejecting Dr. Kalman's examining opinion that found functional

18  limitations arising from plaintiff's PTSD and depression.  As a result of these errors, the residual

19  functional capacity assessed by the ALJ is materially deficient.  Accordingly, the court remands

20  this matter for further proceedings.  The court does not reach plaintiff's additional assignments of

21  error because the error at step two infected the formulation of plaintiff's residual functional

22  capacity and likely impacted the manner in which the ALJ evaluated plaintiff's credibility and the

23  third-party statements in the record.  The ALJ should reconsider plaintiff's remaining allegations

24  of error on remand.

25  ////

26  ////

I.      BACKGROUND[2]

    A.      Procedural History

On January 4, 2008, plaintiff protectively filed an application for Social Security Income benefits, alleging a disability onset date of January 1, 2003. (Admin. Tr. ("AT") 109.) Plaintiff alleged conditions of asthma, breathing problems, heart problems, gout, and arthritis. (See id.; see also AT 129.) On January 17, 2008, plaintiff filed an application for Disability Insurance Benefits, alleging an onset date of June 1, 2005. (AT 113.) Plaintiff subsequently amended his onset date to October 31, 2007. (AT 117.)

The Social Security Administration denied plaintiff's applications initially and upon reconsideration. (AT 42-43, 47-48.) Plaintiff requested a hearing before an ALJ, and the ALJ conducted a hearing regarding plaintiff's claim on March 17, 2010. (AT 28-41, 62-65.) Plaintiff was represented by counsel at the hearing and testified through an interpreter because of his limited facility with the English language. It appears that plaintiff testified in a Hmong dialect. A vocational expert also testified at the hearing.

In a written decision dated April 8, 2010, the ALJ denied plaintiff's applications for benefits on the basis of a finding at step four of the five-step sequential analysis that plaintiff was capable of returning to his past work as a fast food worker and janitor.[3] (AT 22.) The ALJ's

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts herein. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Generally speaking, Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

decision became the final decision of the Commissioner when the Appeals Council denied

plaintiff's request for review.  (See AT 1-3.)  Plaintiff subsequently filed this action.

     B.    Summary of the ALJ's Findings

     The ALJ conducted the required sequential evaluation and concluded that plaintiff

was not disabled within the meaning of the Act.  At step one, the ALJ found that plaintiff had not

engaged in substantial gainful activity since October 31, 2007, the amended alleged disability

onset date.  (AT 19.)

     At step two, the ALJ concluded that plaintiff had the following severe

impairments: "gout, chronic heart failure, asthma, and arthritis."  (AT 19.)  However, the ALJ

also concluded at step two of the analysis that plaintiff's "medically determinable mental

impairment of [PTSD] does not cause more than minimal limitation in the claimant's ability to

perform basic mental work activities and is therefore nonsevere."  (Id.)  In finding that plaintiff's

---

     Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

     Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

     Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

     Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

     Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

     The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

1   PTSD was not severe, the ALJ gave "little weight" to, and essentially rejected outright, Dr.

2   Kalman's examining psychiatrist opinion that identified mental limitations caused by plaintiff's

3   PTSD and depression.  (Id.; see also AT 342-50.)

4          At step three, the ALJ determined that plaintiff's impairments, whether alone or in

5   combination, did not meet or medically equal any impairment listed in the applicable regulations.

6   (AT 20.)  The ALJ further determined that plaintiff had the residual functional capacity ("RFC")

7   to perform light exertional work, with some functional exceptions.  (Id.)  Specifically, the ALJ

8   found:

9          [The claimant] has the residual functional capacity to perform light work
           as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can
10         kneel, crouch, or crawl occasionally; and must avoid concentrated
           exposure to heights, moving machinery, dust, fumes, and smoke.

11

12  (Id.)[4]  This RFC reflected no functional limitations as a result of plaintiff's alleged mental

13  impairments.  In making this finding, the ALJ discounted the credibility of plaintiff's statements,

14  finding that plaintiff's "statements concerning the intensity, persistence and limiting effects of

15  [his] symptoms are not credible to the extent they are inconsistent with finding above [RFC]

16  assessment."  (AT 21.)  The ALJ further rejected the lay witness statements provided by

17  plaintiff's children.  (Id.)

18          At step four, the ALJ found that plaintiff was capable of performing past relevant

19  ─────────────────

20          [4] "Light work" is defined as follows:

21          Light work involves lifting no more than 20 pounds at a time with frequent
            lifting or carrying of objects weighing up to 10 pounds.  Even though the
22          weight lifted may be very little, a job is in this category when it requires a
            good deal of walking or standing, or when it involves sitting most of the time
23          with some pushing and pulling of arm or leg controls.  To be considered
            capable of performing a full or wide range of light work, you must have the
24          ability to do substantially all of these activities.  If someone can do light
            work, we determine that he or she can also do sedentary work, unless there
25          are additional limiting factors such as loss of fine dexterity or inability to sit
            for long periods of time.

26  20 C.F.R. § 404.1567(b); accord 20 C.F.R. § 416.967(b).

                                             5

1  work as a fast food worker and a janitor.  (AT 22.)  The ALJ based this finding on the testimony

2  of the vocational expert who testified at the hearing.  Because of the finding at step four, the ALJ

3  did not reach step five of the inquiry.

4  II.    LEGAL STANDARDS

5           The court reviews the Commissioner's decision to determine whether it is (1) free

6  of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v.

7  Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).  This standard of review has been described as

8  "highly deferential."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir.

9  2009).  "'Substantial evidence means more than a mere scintilla but less than a preponderance; it

10  is such relevant evidence as a reasonable mind might accept as adequate to support a

11  conclusion."  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009)

12  (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d

13  at 690.  "The ALJ is responsible for determining credibility, resolving conflicts in medical

14  testimony, and for resolving ambiguities."  Andrews, 53 F.3d at 1039; see also Tommasetti v.

15  Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to

16  resolving ambiguities in the medical evidence.").  Findings of fact that are supported by

17  substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d

18  1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a

19  denial, [the court] may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222; see

20  also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is

21  susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.")

22  (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must

23  consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum

24  of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466

25  F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir.

26  2007).

1  III.    <u>DISCUSSION</u>

2          Plaintiff argues that the ALJ erred at step two by: (1) finding that plaintiff's PTSD

3  was not a severe impairment; and (2) rejecting the uncontradicted psychiatric opinion of Dr.

4  Kalman, who found significant functional limitations arising from plaintiff's PTSD and

5  depression.  For the reasons stated below, the undersigned finds plaintiff's argument persuasive.

6          At step two of the sequential evaluation, the ALJ determines whether the claimant

7  has a medically "severe" impairment or combination of impairments.  <u>See</u> 20 C.F.R.

8  § 404.1520(a)(4)(ii); <u>accord</u> 20 C.F.R. § 416.920(a)(4)(ii); <u>see also</u> <u>Smolen v. Chater</u>, 80 F.3d

9  1273, 1289-90 (9th Cir. 1996).  An impairment is severe when it significantly limits a claimant's

10 "physical or mental ability to do basic work activities" and lasted or is expected to last "for a

11 continuous period of at least 12 months."  <u>See</u> 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521(a), (c),

12 404.1509; <u>accord</u> 20 C.F.R. §§ 416.920(a)(4)(ii), (c), 416.921(a), 416.909.  Basic work activities

13 refer to "the abilities and aptitudes necessary to do most jobs."[5]  Although centered around the

14 term "severe," "the step-two inquiry is a de minimis screening device to dispose of groundless

15 claims."  <u>See</u> <u>Smolen</u>, 80 F.3d at 1290 (citing <u>Bowen</u>, 482 U.S. at 153-54).  The purpose is to

16 identify "at an early stage those claimants whose medical impairment is so slight that it is

17

18         [5] The applicable regulations provide examples of such "abilities and aptitudes":

19             (1) Physical functions such as walking, standing, sitting, lifting, pushing,
               pulling, reaching, carrying, or handling;

20
21             (2) Capacities for seeing, hearing, and speaking;

22             (3) Understanding, carrying out, and remembering simple instructions;

23             (4) Use of judgment;

24             (5) Responding appropriately to supervision, co-workers and usual work
               situations; and

25             (6) Dealing with changes in a routine work setting.

26 20 C.F.R. § 404.1521(b); <u>accord</u> 20 C.F.R. § 416.921(b).

7

1   unlikely they would be disabled even if their age, education, and experience were taken into

2   account." Bowen, 482 U.S. at 153. "An impairment or combination of impairments may be

3   found not severe *only* if the evidence establishes a slight abnormality that has no more than a

4   minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th

5   Cir. 2005) (citations and quotation marks omitted).

6           Because the ALJ's rejection of Dr. Kalman's opinion is integral to the ALJ's

7   finding at step two, the ALJ's finding implicates the rules regarding the rejection of medical

8   opinions.  The medical opinions of three types of medical sources are recognized in social

9   security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but

10  do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

11  claimant (nonexamining physicians)." Lester, 81 F.3d at 830.  Generally, a treating physician's

12  opinion should be accorded more weight than opinions of doctors who did not treat the claimant,

13  and an examining physician's opinion is entitled to greater weight than a non-examining

14  physician's opinion. Id.  Where a treating or examining physician's opinion is uncontradicted by

15  another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the

16  treating physician's ultimate conclusions. Id.  If the treating or examining doctor's medical

17  opinion is contradicted by another doctor, the Commissioner must provide "specific and

18  legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by

19  substantial evidence in the record. Id. at 830-31; accord Valentine, 574 F.3d at 692.

20          Here, the ALJ found that the plaintiff had a medically determinable impairment of

21  PTSD.  (AT 19.)  Plaintiff's conditions of PTSD and depression were brought sharply into focus

22  by Dr. Kalman, who reviewed plaintiff's medical records and also conducted a one-day

23  psychiatric examination of plaintiff.  (See AT 342-50.)  Dr. Kalman reported plaintiff's chief

24  complaints as anxiety, PTSD, and depression.  (AT 343.)  Dr. Kalman described plaintiff's

25  reports that plaintiff "was in the military in Laos during the Vietnam War," and suffers

26  "nightmares and flashbacks to those events."  (Id.)  Dr. Kalman further stated that plaintiff "also

8

1  described depression and anxiety related to his physical illnesses," including plaintiff's worries

2  that he might die soon.  (Id.)  Dr. Kalman diagnosed plaintiff as having clinical disorders of

3  PTSD and an "[a]djustment disorder secondary to general medical condition." (AT 345.)  He

4  found that plaintiff had a Global Assessment of Functioning ("GAF") score of 50.[6]  (Id.)  Dr.

5  Kalman further opined that plaintiff's "condition is not expected to improve significantly in the

6  next 12 months."  (Id.)

7           Dr. Kalman also completed a form entitled "Medical Source Statement

8  Concerning the Nature and Severity of an Individual's Mental Impairment."  (AT 347-50.)  Of

9  the 20 categories of specific mental functional limitations, Dr. Kalman found that plaintiff was

10  not significantly limited in seven categories and mildly limited in ten categories.  However, Dr.

11  Kalman found that plaintiff was moderately limited in his "ability to accept instructions and to

12  respond appropriately to criticism from supervisors." (AT 349.)  Dr. Kalman further found that

13  plaintiff was markedly limited in his ability to: (1) "understand and remember detailed (3 or more

14  steps) instructions or tasks which may or may not be repetitive"; and (2) "carry out detailed (3 or

15  more steps) instructions or tasks which may or may not be repetitive." (AT 348.)  Dr. Kalman

16  also noted that the following work-related stressors would increase the level of plaintiff's

17  impairment beyond the impairments noted above in the form: "Unruly, demanding or

18  disagreeable customers even on an infrequent basis"; "Production demands or quotas"; "A

19  demand for precision"; "A need to make quick and accurate, independent decisions in problem

20  solving on a consistent basis"; and "A need to make accurate, independent decisions in problem

21  solving on a consistent basis." (AT 349.)  Dr. Kalman opined that plaintiff's medically

22  determinable impairments were sufficiently severe that plaintiff would be unable to complete a

23

24        [6] A GAF score represents a present rating of overall psychological functioning on a scale of
    0 to 100.  See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed.
    2000) ("DSM-IV").  A GAF score in the range of 41 to 50 denotes: "**Serious symptoms** (e.g.,

25  suicidal ideation, severe obsessional rituals, frequent shoplifting **OR any serious impairment in
    social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." Id. (Emphasis

26  in original).

9

1  workday in a full-time work setting approximately twice per month.  (AT 350.)

2          After reviewing the record, including Dr. Kalman's opinion and plaintiff's

3  testimony regarding his mental limitations, the ALJ found that plaintiff's PTSD was not a severe

4  impairment.[7]  The ALJ provided the same two reasons for finding that plaintiff's PTSD was not a

5  severe impairment and for rejecting Dr. Kalman's uncontradicted medical opinion, stating:

6          The claimant's medically determinable mental impairment of [PTSD] does
           not cause more than minimal limitation in the claimant's ability to perform
7          basic mental work activities and is therefore nonsevere.  This conclusion is
           supported by the claimant's testimony that his mental condition is due to
8          physical problems.  The evidence also suggests that the claimant's PTSD
           is stable (see Exhibit 13F/5).  Given this evidence, the undersigned gives
9          little weight to the opinion of a psychiatric evaluator who assigned the
           claimant a [GAF] score of 50 and concluded that the claimant's ability to
10         understand, remember, and carry out detailed tasks was markedly limited
           (Exhibit 14F).

11

12  (AT 19.)

13          The undersigned addresses in turn the ALJ's two reasons supporting his severity

14  finding and rejection of Dr. Kalman's medical opinion.[8]  The undersigned notes that because Dr.

15  Kalman's examining medical opinion was not contradicted, the ALJ was required to provide

16  "clear and convincing" reasons for rejecting that opinion.

17          First, the ALJ reasoned that "the claimant's testimony that his mental condition is

18

19          [7]  The ALJ did not specifically or separately address Dr. Kalman's opinion that plaintiff
suffered from a clinical disorder of an "[a]djustment disorder secondary to general medical
condition."  The ALJ should consider this additional diagnosis on remand.

20

21          [8]  The Commissioner offers additional reasons not relied on by the ALJ in order to
substantiate or bolster the ALJ's finding at step two.  (See Def.'s Opp'n & Cross-Motion for Summ.
22  J. at 8.)  For example, the Commissioner argues that plaintiff's mental condition is well-controlled
by medication, a line of reasoning not asserted by the ALJ.  The undersigned has not considered the
23  Commissioner's newly articulated reasons because the court's review is constrained to the reasons
asserted by the ALJ.  See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the
24  reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground
upon which he did not rely."); accord Tommasetti, 533 F.3d at 1039 n.2 (declining to review reasons
25  provided by the district court in support of the ALJ's credibility decision that were not provided by
the ALJ during the administrative proceedings) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th
26  Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."))); Robbins, 466 F.3d at 884
n.2.

1   due to physical problems." (AT 19.)  It appears that the ALJ relied on the following portion of

2   plaintiff's testimony translated by the interpreter:

3           Q.    How does the post-traumatic stress disorder prevent you from
        working?

4

5           . . . .

6           A .  Well, I think that's because the illness, my illness getting
        worse and I was -- too much worrying about my illness.  So, that's the
        depression coming on after.

7

8           Q.    So, the mental problems are related to your physical
        problems, is that right?

9           A.    That's right.  It, it's caused by the illness.

10          Q.    All right.  I don't have any more questions. . . .

11  (AT 37-38.)

12          At the outset, the undersigned notes that it is not clear what the ALJ intended to

13  convey by the statement that "the claimant's testimony that his mental condition is due to

14  physical problems," and the ALJ did not further explain this comment in the decision.  The

15  Commissioner attempts to supplement or clarify the ALJ's reasoning on appeal, asserting that "a

16  feature of PTSD is the exposure to an extreme traumatic stressor or event."  (Def.'s Opp'n &

17  Cross-Motion for Summ. J. at 7.)[9]  The implication of the Commissioner's argument—albeit not

18  expressly asserted by the ALJ in the written decision being reviewed—appears to be that if

19

20          [9] The Commissioner relies on the DSM-IV's description of the diagnostic features of PTSD,
    which states in part:

21

22          The essential feature of [PTSD] is the development of characteristic
        symptoms following exposure to an extreme traumatic stressor involving
        direct personal experience of an event that involves actual or threatened death
        or serious injury, or other threat to one's physical integrity; or witnessing an
        event that involves death, injury, or a threat to the physical integrity of
        another person; or learning about unexpected or violent death, serious harm,
        or threat of death or injury experienced by a family member or other close
        associate.

23

24

25

26  DSM-IV at 463.

1    plaintiff's claimed PTSD was due to his physical impairments and not a traumatic stressor or

2    event, plaintiff could not have suffered from PTSD.  Setting aside the fact that Dr. Kalman's

3    report specifically identified plaintiff's experience in the Vietnam War as the reported basis of

4    plaintiff's nightmares and flashbacks substantiating the diagnosis of PTSD, the Commissioner's

5    argument fundamentally fails because the ALJ actually found that plaintiff had a "medically

6    determinable mental impairment" of PTSD based on the medical evidence.[10]  (AT 19.)  The

7    Commissioner's construction of the ALJ's decision necessarily relies on the position that

8    plaintiff never actually suffered from diagnosable PTSD, but the ALJ found, to the contrary, that

9    the medical evidence supported a conclusion that plaintiff suffered from PTSD.

10           Additionally, the above-quoted plaintiff's testimony is ambiguous.  Plaintiff

11   assented to the ALJ's question as to whether plaintiff's mental problems were "related" to his

12   physical problems.  However, plaintiff then asserted that his mental problems were "caused by

13   the illness," and it is unclear what plaintiff meant by "the illness."  The ALJ did not ask any

14   follow-up questions in an attempt to clarifying plaintiff's comment regarding causation.  The

15   ambiguity in plaintiff's testimony regarding his mental impairments is consistent with Dr.

16   Kalman's finding that plaintiff's "insight into his mental illness was poor."  (AT 344.)

17           Moreover, the ALJ's reliance on plaintiff's ambiguous testimony does not provide

18   a clear and convincing reason for rejecting Dr. Kalman's opinion regarding plaintiff's functional

19   limitations caused by PTSD and depression.  As stated above, the ALJ's reasoning is not clear at

20

21          [10]   In addressing what measure of proof is required to show an impairment, the
     Commissioner's regulations state, in part:

22
              Your impairment must result from anatomical, physiological, or
23            psychological abnormalities which can be shown by medically acceptable
              clinical and laboratory diagnostic techniques. A physical or mental
24            impairment must be established by medical evidence consisting of signs,
              symptoms, and laboratory findings, not only by your statement of symptoms
25            . . . .

26   20 C.F.R. § 404.1508; accord 20 C.F.R. § 416.908.

1   all, and plaintiff's ambiguous testimony does not support rejection of the psychiatric opinion.

2   Furthermore, the ALJ's reasoning is not directed to any specific aspect of Dr. Kalman's opinion.

3   Without more, the undersigned cannot conclude that the ALJ provided clear and convincing

4   reasons for rejecting Dr. Kalman's examining opinion.

5            Second, the ALJ made his step two finding regarding PTSD, and also rejected Dr.

6   Kalman's opinion, on the grounds that "[t]he evidence also suggests that the claimant's PTSD is

7   stable." (AT 19.)  The ALJ cites a February 2, 2004 progress note from San Joaquin General

8   Hospital's Ambulatory Care Services department, which was prepared by a physician's assistant

9   rather than a physician.  In its entirety, the relevant note states: "PTSD stable." (AT 324.)  The

10  physician's assistant provided no explanation of this remark, and the ALJ cited no additional

11  evidence either supporting this finding or providing context for this finding.[11]  In short, this terse

12  and unexplained treatment note prepared by a physician's assistant does not constitute substantial

13  evidence supporting the ALJ's finding that plaintiff's PTSD was not severe.  Moreover, this

14  conclusory and vague treatment note falls well-short of a clear and convincing reason that

15  supports the rejection of an examining psychiatrist's medical opinion.

16           Based on the foregoing, the ALJ's finding that plaintiff's PTSD was not severe

17  within the meaning of the Act is not supported by substantial evidence.  Additionally, the ALJ's

18  reasons for rejecting Dr. Kalman's opinion are far from clear and convincing.  Thus, the

19  undersigned concludes that Dr. Kalman's opinion substantiates that plaintiff's PTSD and

20  depression are more than slight abnormalities and pass the de minimis screening at step two.

21  Accordingly, the undersigned grants plaintiff's motion for summary judgment in part.  The

22  undersigned concludes that a remand of this matter to the agency is appropriate because the ALJ

23

24           [11]  Additionally, it is unclear what the physician's assistant meant by "stable."  It could very
    well be that the physician's assistant meant that plaintiff's PTSD was stable, but had already reached
25  a point where the symptoms impacted plaintiff's functionality.   Neither the ALJ nor the
    Commissioner provided authority substantiating that the term "stable" meant that plaintiff had no
26  symptoms resulting from PTSD such that PTSD was not a severe impairment.

1  will be required reassess plaintiff's PTSD and plaintiff's depression past step two of the analysis,

2  including reformulation of plaintiff's RFC to include a mental component.  The ALJ's credibility

3  determination and assessment of the third-party statements in the record will likely be impacted

4  by the addition of a severe mental impairment or impairments.

5  IV.    CONCLUSION

6          For the foregoing reasons, IT IS HEREBY ORDERED that:

7          1.      Plaintiff's motion for summary judgment (Dkt. No. 13) is granted in part,

8  and this matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C.

9  § 405(g).

10          2.      The Commissioner's cross-motion for summary judgment (Dkt. No. 14) is

11  denied.

12          3.      The Clerk of Court is directed to enter judgment in favor of plaintiff.

13          IT IS SO ORDERED.

14  DATED:  March 28, 2012

15

16  _____

17  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26